**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**DAVID J. WIDI, JR.,**

                **Plaintiff,**

       v.                                        9:16-CV-1042
                                                                 (FJS/DJS)

**DONALD HUDSON, Warden, FCI Ray Brook;
MICHELLE GONYEA, Case Management
Coordinator, FCI Ray Brook; DAVID
SALAMY, Unit Manager; JEFFREY GLUC,
Case Manager, FCI Ray Brook; and
YANCEY MATTEAU, Case Manager, FCI
Ray Brook,**

                **Defendants.**

---

**APPEARANCES**                                   **OF COUNSEL**

**DAVID J. WIDI, JR.**
P.O. Box 240
Adelphia, New Jersey 07710-0240
Plaintiff *pro se*

**OFFICE OF THE UNITED**             **KAREN F. LESPERANCE, AUSA**
**STATES ATTORNEY**
James T. Foley U.S. Courthouse
445 Broadway, Room 218
Albany, New York 12207-2924
Attorneys for Defendants

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Pending before the Court are Magistrate Judge Stewart's May 21, 2018 Report-Recommendation and Order and Defendants' objections thereto. *See* Dkt. Nos. 178, 182.

## II. BACKGROUND

In his complaint, Plaintiff alleged, among other things, that, during his confinement at Federal Correctional Institution ("FCI") Ray Brook, Defendants intentionally miscalculated his custody score in order to keep him at a medium security level and effected his transfer to FCI Berlin in retaliation for his filing an administrative grievance. *See* Dkt. No. 105, Second Amended Complaint, at ¶¶ 89-96.

Defendants filed a motion to dismiss, contending that they were entitled to dismissal of the complaint on the following grounds: (1) this Court lacked personal jurisdiction over them; (2) this Court should not recognize a *Bivens* remedy for Plaintiff's First Amendment retaliation claims; (3) they were entitled to qualified immunity; and (4) the Court should dismiss Plaintiff's Federal Tort Claims Act ("FTCA") claims because Plaintiff only alleged constitutional violations, for which the United States had not waived sovereign immunity.

In his May 21, 2018 Report-Recommendation and Order, Magistrate Judge Stewart recommended that this Court grant in part and deny in part Defendants' motion to dismiss. *See* Dkt. No. 178 at 10. Specifically Magistrate Judge Stewart recommended that the Court (1) dismiss Plaintiff's FTCA claim and deny Defendant's motion with regard to the rest of Plaintiff's claims and (2) order the U.S. Marshals to serve the summons in this action on Defendants. *See id.* at 11.

Defendants filed objections to Magistrate Judge Stewart's recommendation that the Court find that Plaintiff's claim for "retaliatory transfer" under the First Amendment properly alleged a *Bivens* claim. *See* Dkt. No. 182 at 6-7.

# III. DISCUSSION[1]

## A. Standard of review

When a court reviews a magistrate judge's recommendations, its review is *de novo* as to those recommendations to which a party objects, *see Pizzaro v. Bartlett*, 766 F. Supp. 815, 817 (S.D.N.Y. 1991), and for clear error or manifest injustice as to those recommendations to which a party does not object or makes only conclusory or general objections, *see Linares v. Mahunik*, No. 9:05-CV-625, 2009 WL 3165660, *10 (N.D.N.Y. July 16, 2009) (citation and footnote omitted); *McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y. 2007). After conducting its review, "the Court may 'accept, reject, or modify, in whole or in part, the . . . . recommendations made by the magistrate judge.'" *Linares*, 2009 WL 3165660, at *10 (quoting 28 U.S.C. § 636(b)(1)(C)).[2]

## B. Plaintiff's First Amendment retaliation claim under *Bivens*

In his complaint, Plaintiff claimed that Defendants had retaliated against him for filing an administrative complaint against them in violation of his First Amendment rights. He purported to bring his claim under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). Defendants filed a motion to dismiss this claim, arguing that *Bivens* did not provide a remedy for

---

[1] In an Order dated March 13, 2019, this Court accepted Magistrate Judge Stewart's recommendation that the Court deny Defendants' motion to dismiss Plaintiff's complaint for lack of personal jurisdiction, ordered that the period for service be extended, and directed that the Clerk issue summonses for the named Defendants and provide the necessary documents to the United States Marshals Service to effect service of the summons and complaint on Defendants. *See* Dkt. No. 187 at 2-3.

[2] The parties did not file any objections to Magistrate Judge Stewart's recommendation that the Court dismiss Plaintiff's FTCA claims. The Court has reviewed that recommendation for clear error or manifest injustice and, finding none, accepts that recommendation.

such a claim.

Magistrate Judge Stewart disagreed. In doing so, he relied primarily on his decision in a factually similar case, *Marino v. Watts*, No. 9:12-CV-801, Dkt. No. 79 (N.D.N.Y. Aug. 8, 2016), *report and recommendation adopted, Marino v. Watts*, 2016 WL 5477729 (N.D.N.Y. Sept. 29, 2016), in which he had ultimately determined that a *Bivens* remedy was available for an allegation of a First Amendment violation.

Approximately one year after Magistrate Judge Stewart issued his recommendation in *Marino*, the Supreme Court rendered its decision in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), which, Defendants argued, required courts to examine *Bivens* claims for alleged First Amendment violations anew even if they had previously allowed such claims in the past. Magistrate Judge Stewart disagreed, finding that, although "*Ziglar* reiterate[d] the Supreme Court's hesitation to recognize additional implied *Bivens* remedies, it d[id] not alter the relevant legal landscape that existed when *Marino* was decided[;]" and, thus, he found that "his reasoning in *Marino . . .* remain[ed] persuasive." *See* Dkt. No. 178 at 7.

The Court respectfully disagrees with Magistrate Judge Stewart's conclusion regarding the effect of *Ziglar* on the legal landscape pertinent to the viability and extension of *Bivens* to First Amendment retaliation claims such as Plaintiff's.

In *Ziglar*, the Supreme Court noted that, in the hundred years between Congress's enactment of 42 U.S.C. § 1983, and the Court's decision in *Bivens*, "Congress [had] not provide[d] a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government." *Ziglar*, 137 S. Ct. at 1854. Nonetheless, in *Bivens*, the Court had determined that, "even absent statutory authorization, it would enforce a damages remedy to compensate persons

injured by federal officers who violated the prohibition against unreasonable search and seizures." *Id.* (citing [*Bivens]*, 403 U.S., at 397, 91 S. Ct. 1999). The Court further noted, however, that since its decision in *Bivens* in 1971, it had only recognized an implied cause of action under *Bivens* in two cases involving other constitutional violations. *See id.* at 1854-55 (citing *Davis v. Passman*, 442 U.S. 228, 99 S. Ct. 2264, 60 L. Ed. 2d 846 (1979) (holding that the Fifth Amendment Due Process Clause provided an administrative assistant who sued a Congressman for firing her because she was a woman a damages remedy for gender discrimination); *Carlson v. Green*, 446 U.S. 14, 100 S. Ct. 1468, 64 L. Ed. 2d 15 (1980) (holding that the Eighth Amendment Cruel and Unusual Punishments Clause provided a prisoner's estate a damages remedy for failure to provide the deceased with adequate medical treatment).

The Court further explained that, after *Bivens*, "the arguments for recognizing implied causes of action for damages began to lose their force . . . [and] the Court adopted a far more cautious course before finding implied causes of action[.]" *Id.* at 1855. In addition, the Court noted that, "when the question is whether to recognize an implied cause of action to enforce a provision of the Constitution . . . it is a significant step under separation-of-powers principles for a court to determine that it has the authority, under the judicial power, to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation." *Id.* at 1856.

Moreover, the Court stated that, "[g]iven the notable change in the Court's approach to recognizing implied causes of action, . . . the Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 1857 (quotation omitted). "This is in accord with the Court's observation that it has 'consistently refused to extend *Bivens* to any new context or new category of defendants.'" *Id.* (quoting *Correctional Services Corp. v. Malesko*, 534 U.S. 61,

-5-

68, 122 S. Ct. 515, 151 L. Ed. 2d 456 (2001). Indeed, the Court has refused to do so for the past 30 years." *Id.*

Despite the Court's stated concern in *Ziglar* about any further expansion of implied rights to claims in a new *Bivens* context where any special factors counseled hesitation in permitting such an expansion, Magistrate Judge Stewart concluded that *Bivens* should be extended to encompass Plaintiff's First Amendment retaliation claim. To the contrary, the vast majority of courts that have addressed the effect of *Ziglar* on extending *Bivens* to encompass claims similar to Plaintiff's have reached the opposite result. *See, e.g., Buenrostro v. Fajardo*, 770 F. App'x 807, 808 (9th Cir. 2019) (Memorandum) (finding that the inmate plaintiff's First Amendment retaliation claim arose in a "new context" and that "special factors counsel[ed] against extending *Bivens* to [the plaintiff's] First Amendment claim," including the fact that "Congress has addressed the question of prisoners' remedies" in the PLRA and, "[i]n addition, an alternative remedial structure exists, including through the Bureau of Prisons administrative grievance process"; and, therefore, concluding that extending *Bivens* to the plaintiff's First Amendment claim was not appropriate (citations omitted)); *Bistrian v. Levi*, 912 F.3d 79, 96 (3d Cir. 2018) (finding that the inmate plaintiff's "[First Amendment] retaliation claim involves executive policies, implicates separation-of-power concerns, and threatens a large burden to both the judiciary and prison officials, [and] conclud[ing] that the special factors analysis prevents an extension of *Bivens* to cover such claims"); *Silva v. Canarozzi*, No. 3:18-CV-1771 (MPS), 2019 WL 1596346, *3 (D. Conn. Apr. 15, 2019) (finding that the federal inmate plaintiff, who had asserted a First Amendment retaliation claim, could "challenge the execution of his sentence, including prison disciplinary actions and prison conditions, by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241," and, thus, concluding that, "[i]n

light of this alternative avenue for relief and the Supreme Court's expressed reluctance to recognize new causes of action under *Bivens*, [it would] decline to extend *Bivens* to encompass [the plaintiff's] claims" (citations omitted)); *Atkinson v. Broe*, No. 15-CV-386-wmc, 2019 WL 231754, *2-*5 (W.D. Wis. Jan. 16, 2019) (finding that the federal inmate plaintiff's Fifth Amendment due process and First Amendment retaliation claims were on a "different constitutional footing and therefore were "arguably meaningfully different from the Fourth, Fifth and Eighth Amendment claims" that the Supreme Court had recognized in *Bivens*, *Davis*, and *Carlson* and that these claims fell "short under a 'special factors analysis'"; noting that "the majority of courts considering the question have concluded that a *Bivens* claim is no longer available for a First Amendment retaliation claim, including the Third Circuit in *Bistrian v. Levi*, 912 F.3d 79, 95-96 (3d Cir. 2018)" and concluding that it "would follow suit" (citations omitted)); *Badley v. Granger*, No. 2:17-CV-00041-JMS-DLP, 2018 WL 3022653, *4 (S.D. Ind. June 18, 2018) (finding that the inmate plaintiff's First Amendment retaliation claims were unlike the claims at issue in *Bivens, Davis*, and *Carlson*, and holding "that the special f actors analysis dictate[d] hesitation in applying *Bivens* to First Amendment retaliation claims and that judicial intervention with the creation of a retaliation claim against federal actors [was] not warranted").

The Court finds the reasoning of these courts persuasive and agrees with their conclusion that, given the Supreme Court's reluctance to recognize new causes of action under *Bivens*, courts should not extend *Bivens* to encompass federal inmates' First Amendment retaliation claims because such claims arise in a new context and the special factors analysis dictates hesitation in applying *Bivens* to such claims in light of the fact that federal inmates have alternative remedies on which they can rely, including the Bureau of Prisons administrative remedy process and a writ of *habeas*

*corpus*, as well as the fact that Congress did not provide for such a damages remedy for federal inmates when it enacted the Prisoner Litigation Reform Act. Accordingly, the Court finds that Plaintiff cannot maintain a First Amendment retaliation claim under *Bivens*.

### IV. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Stewart's May 21, 2018 Report-Recommendation and Order, *see* Dkt. No. 178, is **ACCEPTED in part and REJECTED in part** for the reasons stated herein and in the Court's March 13, 2019 Order; and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiff's FTCA claims and Plaintiff's First Amendment retaliation claims under *Bivens*, *see* Dkt. No. 171, is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**

Dated: August 1, 2019
       Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge